1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14

| | |
|---|---|
| CHONGYEE LENGNOU XIONG, | ) 1: 02-cv-6525-SMS |
| | ) |
| Plaintiff, | ) ORDER GRANTING IN PART AND |
| v. | ) DENYING IN PART DEFENDANT'S |
| | ) MOTION FOR SUMMARY JUDGMENT OR |
| ANN M. VENEMAN, et al., | ) SUMMARY ADJUDICATION (DOC. 26) |
| | ) |
| Defendants. | ) ORDER STRIKING DOCUMENTS FILED BY |
| | ) PLAINTIFF ON AUGUST 4, 2005 |
| _____ | ) (Docs. 30 through 33) |

ORDER GRANTING DEFENDANT'S
REQUEST TO STRIKE PLAINTIFF'S
JURY DEMAND

15
16
17
18
19
20
21
22
23
24

    Plaintiffs are proceeding with a civil action in this Court.
The parties have consented to the jurisdiction of the Magistrate
Judge pursuant to 28 U.S.C. § 636(c)(1), and the case has been
assigned to the  Magistrate Judge to conduct all further
proceedings, including trial and the entry of a final judgment.

    I. Background

    Plaintiff, who was and is represented by counsel, filed a
complaint on December 6, 2002, and an amended complaint on May 2,
2003; a stipulated order further amending the first amended

25
26
27
28

1

complaint was filed on June 9, 2004. Plaintiff, a citizen of the United States of Asian race, whose native language is Hmong, claims discrimination based on his national origin of Lao-Hmong in connection with his employment of the United States Forest Service (USFS), Department of Agriculture. He complains of Defendant's termination of his appointment as a student trainee on January 31, 1999, at an advanced firefighting academy in the Wildland Firefighter Apprentice Program (WFAP); conversion of Plaintiff's employment from permanent to temporary on May 9, 1999; and termination of his employment on or about November 20, 1999. (Complt. at 2.)

Plaintiff complains that during testing for the Fire Methods and Procedures portion of the academy, S-234, he had trouble understanding a question or questions, all of which were printed exclusively in the English language; he asked the instructor or proctor to explain the questions because of difficulty in understanding them; and despite the Defendant's practice of explaining and clarifying questions, Plaintiff was denied the requested explanation and clarification; he failed the written test because the written English format in which the questions were presented caused him difficulty in understanding them, and because he was denied the requested assistance. (Complt. at 6.)

When Plaintiff retested, he requested the assistance of a Hmong interpreter, but the Apprentice Coordinator refused his request because she asserted that the interpreter might give the test taker the answer rather than just an interpretation of the question. When Plaintiff retested without the assistance of an interpreter, he failed the test because of the English format and

1  the refusal of his request for an interpreter.

2      On January 31, 1999, Plaintiff was terminated from the
3  academy because he failed the written test. He alleges that he
4  was otherwise well qualified.

5      Thereafter, Plaintiff continued to work for Defendant, who
6  then adopted a policy to require apprentices to write and speak
7  English fluently as a basic safety requirement; this policy was
8  not a bona fide occupational qualification and was adopted
9  deliberately to formalize the earlier practice that had been
10 recognized as having a likely discriminatory impact, and which
11 locked Plaintiff out from re-applying to regain employment.

12     As a result of the discriminatory testing and English
13 fluency requirement, Defendants terminated Plaintiff's employment
14 on the basis of his national origin.  (Id. at 7-9.)

15     Plaintiff seeks special damages (back pay, front pay, and
16 damages for loss of earning capacity), general damages,
17 attorney's fees, and costs. (Cmplt. at 9-10.)

18     Defendant filed a motion for summary judgment, statement of
19 undisputed facts, declarations of Shirley Sutliff, Russell R.
20 Bennion, and Kristi Kapetan, and a memorandum of points and
21 authorities on March 25, 2005, pursuant to the Court's schedule
22 as set by its order of October 4, 2004, which provided that 1)
23 the deadline for filing the response to the motion for summary
24 judgment was no later than May 27, 2005, and 2) the deadline for
25 filing a reply was June 24, 2005. The motion was originally set
26 for hearing on August 1, 2005, a day of the week on which law and
27 motion is not customarily heard; the hearing was reset for August
28 5, 2005, by the Court's minute order of March 31, 2005, which did

1  not modify the Court's schedule for the filing of a response to
2  the motion.

3      Plaintiff did not file timely opposition. On June 23, 2005,
4  Defendant nevertheless served and filed a reply in which it noted
5  that Plaintiff had not filed opposition and thus was precluded
6  from oral argument pursuant to the local rules of court. In the
7  reply Defendant further cited authority to the effect that the
8  Court is not required independently to search the record for
9  evidence establishing a material issue of fact where no factual
10 showing is made in opposition to a motion for summary judgment.

11     On August 4, 2005, at 3:37 p.m., Plaintiff filed a separate
12 statement, memorandum in opposition to the motion, and two
13 declarations of James C. Holland: one authenticating exhibits,
14 and another regarding the late filing of opposition. No formal
15 motion or request for an extension of time or to permit the late
16 filing of the opposition was made by Plaintiff.

17     Due to the unanticipated unavailability of the Court on the
18 morning of August 5, 2005, the hearing on the motion was
19 initially continued by minute order to September 9, 2005;
20 however, the Court solicited input from the Defendant with
21 respect to the propriety of the Court's considering the
22 Plaintiff's late opposition. Defendant filed a statement of its
23 position on August 19, 2005. On August 30, 2005, the Court
24 vacated the hearing pursuant to Rule 78-230(c) of the Local Rules
25 of Practice for the United States District Court, Eastern
26 District of California because Plaintiff, who had filed untimely
27 opposition, was not entitled to be heard in opposition to the
28 motion at a hearing.

1    II. <u>Consideration of Late Opposition</u>

2        The Court had considered the instant motion on the basis of
3    the timely filed papers before Plaintiff filed its late
4    opposition. The Defendant had completed its written preparation
5    for the motion before Plaintiff filed its late opposition.
6    Significant resources of the Court and the parties were thus
7    expended before Plaintiff filed its opposition.

8        Plaintiff received sufficient notice of the pertinent
9    deadlines. The scheduled dates were set in October 2004.
10   Reference to Defendant's counsel's declaration reveals that the
11   electronic record shows that Plaintiff's counsel received
12   electronic service of the motion; when no opposition was filed by
13   the deadline of May 27, 2005, counsel for Defendant telephoned
14   counsel for Plaintiff, but the call was not returned, and
15   Plaintiff's counsel never attempted to contact Defendant's
16   counsel before he filed the late opposition on August 4, 2005.
17   Even the service and filing of Defendant's "reply" in June 2005,
18   which referred to the lack of opposition, did not prompt timely
19   efforts on the part of Plaintiff's counsel.

20       The declaration of James C. Holland, Plaintiff's counsel,
21   regarding the late filing of the opposition to the motion for
22   summary judgment was submitted to explain the late filing of the
23   opposition and to request a continuance of the hearing and an
24   allowance of time to Defendant to file a reply so that the
25   tardily filed matter could be considered in connection with the
26   merits of the motion. Plaintiff's counsel stated that when the
27   hearing date was continued for a four-day period to August 5, he
28   assumed that the opposition would not need to be filed until

1  fourteen days before the hearing. However, the scheduling order

2  provided for an earlier deadline, and the scheduling order had

3  not been amended. Further, although Local Rule 78-230(c) provides

4  for filing of opposition fourteen days before a hearing, the

5  electronic or mail service[1] of opposition is required to be

6  effected no less than seventeen days before the hearing, not

7  fourteen days.

8      Plaintiff declared that he had just begun working on the

9  opposition as fourteen days before the hearing approached; he

10  then became ill, developed a sinus and/or ear infection within

11  two days, and received ten days of antibiotic treatment which did

12  not prevent the spread of the infection into counsel's chest.

13  Counsel was exhausted, had a nearly constant headache, and had

14  much difficulty concentrating; his recovery was slow, and he was

15  only able to complete the opposing papers on the eve of the

16  hearing.

17      Counsel states no facts explaining why he assumed that the

18  scheduled due dates had been changed, or why he could not have

19  communicated with Defendant's counsel or sought an extension of

20  time from the Court. The Court's initial scheduling order filed

21  on July 22, 2003, provides that if the parties determine that the

22  schedule cannot be met, counsel are to notify the Court

23  immediately so that adjustments may be made by stipulation or

24  subsequent status conference; it further provides that failure to

25  comply with the order "SHALL RESULT IN THE IMPOSITION OF

26  SANCTIONS." Although the parties previously engaged in

27

28

[1] It appears that the parties were serving documents electronically in this action.

stipulations to modify the schedule, Plaintiff's counsel failed to initiate this process with respect to the deadline for the opposition, and indeed failed even to respond to Defendant's service and filing of a reply that noted the absence of timely opposition.

The Court sympathizes with the position of a practitioner dealing with illness while involved in litigation. However, the Court is likewise concerned with the efficient administration of justice and the intelligent and economical use of the Court's resources.

There is an absence of any indication why Plaintiff's counsel could not have communicated with counsel or the Court to have timely sought an extension of time with respect to opposing the motion. The Court emphasizes that even if there were a basis for granting a timely sought extension of time, the failure of counsel to seek such an extension rendered the motion unopposed and put the Court, which must adhere to the schedule set by the pertinent rules and notices, in the position of expending resources in considering the motion without input from Plaintiff's counsel. Although the opposition has apparently now been completed, this does not address the Court's concerns regarding the efficient administration of justice.

Local Rule 6-144(d) provides that counsel shall seek to obtain a necessary extension from the Court or from other counsel or parties in an action as soon as the need for an extension becomes apparent. Requests for Court-approved extensions brought on the required filing date for the pleading or other document are looked upon with disfavor. Counsel here has not shown an

1  excuse or justification for failing to comply with this local
2  rule or with the Court's scheduling order. Significant resources
3  of the Court and of the moving party have been expended.

4      A court has inherent power to control its docket and the
5  disposition of its cases with economy of time and effort for both
6  the court and the parties. Landis v. North American Co., 299 U.S.
7  248, 254-255 (1936); Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th
8  Cir. 1992). Further, a court has broad discretion to interpret
9  and apply its local rules. Dulange v. Dutro Construction, Inc.,
10 183 F.3d 916, 919 n. 2 (9th Cir. 1999). Local Rule 78-230 requires
11 that opposition to a motion be filed not less than fourteen days
12 preceding the hearing date and served not less than fourteen or
13 seventeen days (personal service, or electronic and mail,
14 respectively) preceding the hearing date. The Court in its
15 discretion may refuse to consider matters that are not timely
16 filed as a result of inexcusable neglect. Cusano v. Klein, 264
17 F.3d 936, 950-51 (9th Cir. 2001) (not considering evidence
18 submitted late in response to a motion for summary judgment).
19 Plaintiff's counsel has not established any excuse for his
20 noncompliance with the Court's rules and its scheduling order. It
21 would require the expenditure of substantial amounts of the time
22 of the Court and its staff as well as significant resources of
23 the opposing party if the Court and the parties were required to
24 review serially filed submissions on motions without regard to
25 any schedule or deadlines. If the Court were to allow unlimited
26 filings in the manner apparently sought by Plaintiff, the Court
27 could never be sufficiently certain of the parties' positions to
28 be able to rule on a motion presented to it. The Court would not

8

1 be able to maintain the orderly administration of justice, and

2 substantial resources of the Court would be wasted. Such

3 procedures would be unfair to the parties and the Court.

4     Accordingly, the Court in its exercise of its discretion

5 DECLINES TO CONSIDER the late opposition, and the Plaintiff's

6 materials filed on August 4, 2005 (Docs. Nos. 30-33) submitted in

7 response to Defendant's motion for summary judgment ARE STRICKEN.

8     III. <u>Undisputed Facts</u>[2]

9 1. Plaintiff was employed by the Forest
Service as a temporary seasonal firefighter
10 beginning in 1996. In 1998, he was selected
to participate in the Wildland Firefighter
11 Apprentice Program (WFAP). The WFAP is
an accredited educational program which
12 provides apprentices who complete the
program to be converted from student
13 apprentice status to career conditional status.
(Deposition of Chongyee Lengnou Xiong,
14 ("Xiong Depo.") 29:1-2; 32:2-17.
Declaration of Shirley Sutliff, ("Sutliff Dec.")
15 ¶ 3, 5.)

16 2. In order to complete the WFAP,
apprentices must complete the Basic and
17 Advanced formal training academies,
participate in supplemental training to be
18 provided by their home unit, and complete a
minimum number of hours of practical work
19 experience in wildland fire management
activities.
20 (Sutliff Dec., ¶4.)

21 3. In March, 1998, Plaintiff entered the Basic
Academy and successfully completed it,
22 including successfully completing a number
of written tests.
23 (Sutliff Dec., ¶ 5.)

24 4. In January, 1999, Plaintiff entered the
Advanced Academy. Among the
25 requirements to successfully complete the
Advanced Academy was passing a written
26 exam in each of four classes with a score of

27

28       [2] This statement is derived from Plaintiff's Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (SUF).

1  80%. At the time that Plaintiff was an
   apprentice in the WFAP, apprentices who
2  failed an exam were allowed to re-take the
   exam once.
3  (Sutliff Dec., ¶ 6.)

4  5. At both the Basic and Advanced
   Academy, all written tests were printed
5  exclusively in the English language. The first
   course at the Advanced Academy was Fire
6  Behavior, S-290. Four apprentices failed the
   S-290 test: 2 white, 1 Asian and 1 African
7  American.
   (Sutliff Dec., ¶ 7.)
8
   6. Plaintiff was the Asian who failed the S-
9  290 test the first time and he failed it with a
   score of 60%.
10 (Sutliff Dec., ¶8.)

11 7. On re-take, three apprentices passed the
   exam, including the Plaintiff, and one failed.
12 Plaintiff passed with a score of 93%; the
   individual who failed on re-take was white.
13 (Sutliff Dec., ¶ 8.)

14 8. The second course with an exam was
   Firing Methods and Procedures, S-234. Two
15 apprentices failed the first S-234 exam;
   Plaintiff (with a score of 57%) and another
16 apprentice who was not Asian. On re-take,
   the other individual passed and the Plaintiff
17 failed the re-take with a score of 66.3%.
   8. Sutliff Dec., ¶ 9.
18
   9. Because he failed to pass the exam in S-
19 234, plaintiff was dismissed from the WFAP
   on January 25, 1999, and returned to his
20 home unit, the Sequoia National Forest.
   (Sutliff Dec., ¶ 10.)
21
   10. There were two additional tests taken by
22 the apprentices; the S-205 and S-200. Four
   apprentices failed the S-200; two Asians and
23 two non-Asians.
   (Sutliff Dec., ¶11.)
24
   11. On re-take, the two non-Asians passed
25 and the two Asians failed. It is unknown
   whether the other two Asians at the academy
26 were non-native English speakers.
   (Sutliff Dec., ¶12; Declaration of Russell
27 Bennion ("Bennion Dec.) ¶ 3, 4.)

28 12. It is unknown whether there were other

1 non-native English speakers at the academy
who were not Asian.
2 (Bennion Dec., ¶3, 4.)

3 13. On January 31, 1999, Plaintiff was
placed in non-pay status. This was normal
4 for him as he was not generally paid during
the "off season"; he was a seasonal
5 firefighter. On April 11, 1999, when fire
season approached in the Spring, Plaintiff
6 was placed in pay status.
(Xiong Depo., 28:1-30:26; 31:1-24;
7 34:12-35:26; 36:4-11; 52:2-55:5.)

8 14. However, because he was no longer
enrolled in an educational program, on May
9 9, 1999, plaintiff's excepted student
appointment was converted to a temporary
10 appointment. On November 20, 1999, at the end of
fire season, Plaintiff's temporary position was
11 terminated. This "termination" was not
unusual as Plaintiff was generally laid off in
12 November until the next fire season, except
for the times he attended the Academy.
13 However, after this "termination," Plaintiff
did not return to federal service.
14 (Xiong Depo., 28:1-30:26; 31:1-24;
34:12-35:26; 36:4-11; 37:18:-38-21; 46:5-17; 47:20-26;
15 52:2-55:5.)

16 15. Plaintiff testified at deposition that on the
first take of the S0234 exam, that he failed at
17 the Advanced Academy, he asked an
instructor to explain the questions during the
18 exam. The instructor told him there was no
more time left and he could not assist him in
19 answering the question. Plaintiff testified that
he did not believe the instructor was lying; he
20 did not have any time left on the exam and
believed that was why the instructor declined
21 to assist him.
(Xiong Depo., 69:7-70:26; 86.)
22
16. Although in the Complaint Plaintiff
23 states he requested a Hmong interpreter for
the re-test, at deposition he stated he did not
24 want an interpreter, he just wanted someone
to explain the questions to him in English.
25 (Xiong Depo., 241:12-242:7.)

26 17. There were five Asians, three African
Americans, three Hispanics, one American
27 Indian, 22 Non-minority and ten persons of
unknown ethnicity from Region 5 at the
28 Academy the same time as Mr. Xiong.

11

1 (Sutliff Dec., ¶12.)

2 18. The Forest Service uses the categories of American Indian/Alaskan native,
3 Asian/Pacific Islander, African American, Hispanic, Non-minority and Unknown in
4 keeping its statistics regarding race and national origin. The Forest Service does not
5 maintain a record of whether or not individuals are "non-native English
6 speakers." (Bennion Dec., ¶ 3, 4.)

7

8 19. The Forest Service does not break up Asian ethnicity into various subsets such as Hmong, Vietnamese, Chinese or Japanese.
9 Instead, there is merely the category of "Asian" with no designation of their native
10 language. (Bennion Dec., ¶ 5.)

11          IV. <u>Analysis</u>

12             A. <u>Summary Judgment</u>

13

14       Summary judgment is appropriate when it is demonstrated that

15 there exists no genuine issue as to any material fact, and that

16 the moving party is entitled to judgment as a matter of law.

17 Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

18

19             [A]lways bears the initial responsibility of informing the district court of the basis for
20             its motion, and identifying those portions of "the pleadings, depositions, answers to
21             interrogatories, and admissions on file, together with the affidavits, if any," which
22             it believes demonstrate the absence of a genuine issue of material fact.

23 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). It is the

24 moving party's burden to establish that there exists no genuine

25 issue of material fact and that the moving party is entitled to

26 judgment as a matter of law. <u>British Airways Board v. Boeing Co.</u>,

27 585 F.2d 946, 951 (9th Cir. 1978).

28       If a party moves for summary judgment with respect to a

matter as to which the opposing party has the ultimate burden of persuasion at trial, then the moving party must show that the opposing party cannot meet its burden of proof at trial by establishing that there is no genuine issue of material fact as to an essential element of the opposing party's claim or defense; the moving party must meet the initial burden of producing evidence or showing an absence of evidence as well as the ultimate burden of persuasion. Nissan Fire Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the opposing party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990)). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. Id.

However, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 323. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. "[A] complete failure of proof concerning

13

1  an essential element of the nonmoving party's case necessarily
2  renders all other facts immaterial." Id. In such a circumstance,
3  summary judgment should be granted, "so long as whatever is
4  before the district court demonstrates that the standard for
5  entry of summary judgment, as set forth in Rule 56(c), is
6  satisfied." Id. at 323.

7     If the moving party meets its initial responsibility, the
8  burden then shifts to the opposing party to establish that a
9  genuine issue as to any material fact actually does exist.
10 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
11 586 (1986). In attempting to establish the existence of this
12 factual dispute, the opposing party may not rely upon the denials
13 of its pleadings, but is required to tender evidence of specific
14 facts in the form of affidavits or admissible discovery material
15 in support of its contention that the dispute exists. Rule 56(e);
16 Matsushita, 475 U.S. at 586 n.11. The opposing party must
17 demonstrate that the fact in contention is material, i.e., a fact
18 that might affect the outcome of the suit under the governing
19 law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
20 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809
21 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,
22 i.e., the evidence is such that a reasonable jury could return a
23 verdict for the nonmoving party, Wool v. Tandem Computers, Inc.,
24 818 F.2d 1433, 1436 (9th Cir. 1987).

25    In the endeavor to establish the existence of a factual
26 dispute, the opposing party need not establish a material issue
27 of fact conclusively in its favor. It is sufficient that "the
28 claimed factual dispute be shown to require a jury or judge to

resolve the parties' differing versions of the truth at trial."
T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary
judgment is to 'pierce the pleadings and to assess the proof in
order to see whether there is a genuine need for trial.'"
Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)
advisory committee's note on 1963 amendments). The evidence of
the opposing party is to be believed, Anderson, 477 U.S. at 255,
and all reasonable inferences that may be drawn from the facts
placed before the court must be drawn in favor of the opposing
party, Matsushita, 475 U.S. at 587 (citing United States v.
Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)).
Nevertheless, it is the opposing party's obligation to produce a
factual predicate from which an inference may be drawn. Richards
v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal.
1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Although the
Court must not weigh the evidence, the Court must draw reasonable
inferences; evidence that is too insubstantial or speculative may
be insufficient to establish the existence of a genuine issue of
material fact. Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250,
1255 (9th Cir. 1982). A mere scintilla of evidence supporting the
opposing party's position will not suffice; there must be enough
of a showing that the jury could reasonably find for that party.
Anderson, 477 U.S. at 251-52. Where the record taken as a whole
could not lead a rational trier of fact to find for the nonmoving
party, there is no genuine issue for trial. Id. at 587.

    The showings must consist of admissible evidence,
Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324,
1335 n.9 (9th Cir. 1980), or pleadings, depositions, answers to

1  interrogatories, admissions, and affidavits or declarations, Fed.

2  R. Civ. P. 56(c). Affidavits shall be based on personal

3  knowledge, set forth such facts as would be admissible in

4  evidence, and show affirmatively that the affiant is competent to

5  testify to the matters stated therein. Fed. R. Civ. P. 56(e).

6  Sworn or certified copies of all papers or parts thereof referred

7  to in an affidavit shall be attached thereto or served therewith.

8  Id. Declarations pursuant to 28 U.S.C. § 1746 may be used with

9  the same force and effect as affidavits. Pollock v. Pollock, 154

10 F.3d 601, 611, n.20 (6th Cir. 1998). A plaintiff's verified

11 complaint may be considered as an affidavit in opposition to

12 summary judgment if it is based on personal knowledge and sets

13 forth specific facts admissible in evidence. Lopez v. Smith, 203

14 F.3d 1122, 1132 (9th Cir. 2000). Personal knowledge may be

15 inferred from declarations themselves, such as from facts

16 concerning a declarant's position and participation, Barthelemy

17 v. Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990);

18 however, a court cannot draw an inference about facts not

19 specifically put in the record by a party, and a court will not

20 assume that general averments embrace specific facts needed to

21 sustain a complaint, Lujan v. National Wildlife Federation, 497

22 U.S. 871, 887 (1990). An admission in a pleading, including a

23 defendant's failure to deny an allegation in a complaint,

24 constitutes an admission. Fed. R. Civ. P. 8(d); Lockwood v Wolf.

25 Corp., 629 F.2d 603, 611 (9th Cir. 1980). Unauthenticated

26 documents cannot be considered on a motion for summary judgment.

27 Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542,

28 1550 (9th Cir. 1990). Legal memoranda and oral argument are not

evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. <u>British Airways Bd. v. Boeing Co.</u>, 585 F.2d 946, 952 (9th Cir. 1978).

The Court is not obligated to consider matters that are in the record but are not specifically brought to its attention; the parties must designate and refer to specific triable facts. Even in the absence of a local rule, for evidence to be considered, the party seeking to rely on it must specify the fact by indicating what the evidence is or says and must indicate where it is located in the file. Although the Court has discretion in appropriate circumstances to consider other material, it has no duty to search the record for evidence establishing a material fact. <u>Carmen v. San Francisco United School Dist.</u>, 237 F.3d 1026, 1029 (9th Cir. 2001). In the instant case, the Court has considered only the evidence which Defendant has specified.

A party moving for summary judgment is entitled to the benefit of any relevant presumptions that support the motion provided that the facts giving rise to the presumption are undisputed. <u>Coca-Cola Co. v. Overland, Inc.</u>, 692 F.2d 1250, 1254 (9th Cir. 1982).

B. <u>Discriminatory Treatment</u>

42 U.S.C. § 2000e(2)(a)(1) and (2) provides in pertinent part that it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or national origin; or to limit, segregate, or classify employees or applicants for

1  employment in any way which would deprive or tend to deprive any

2  individual of employment opportunities or otherwise adversely

3  affect his status as an employee, because of such individual's

4  race or national origin.

5      Proof of discrimination requires proof that an adverse

6  employment action was suffered because of the protected

7  characteristic. This may be proved by a theory of disparate

8  treatment, disparate impact, or failure to accommodate where

9  there is a duty to do so.

10     A plaintiff in a suit for discriminatory treatment pursuant

11  to Title VII of the Civil Rights Act of 1964 must prove that

12  there has been intentional discrimination on prohibited grounds,

13  that is, that similarly situated individuals were treated

14  differently because of a protected characteristic, <u>International</u>

15  <u>Brotherhood of Teamsters v. United States</u>, 431 U.S. 324, 335-36

16  n. 15 (1977); discriminatory motive must be proved, <u>id.</u>, and it

17  must be shown that it was the determinative factor or influence

18  in the adverse employment action, <u>Hazen Paper Co. v.Biggins</u>, 507

19  U.S. 604, 610 (1993).

20     A plaintiff must carry the initial burden to establish a

21  prima facie case of racial discrimination. Thereafter, the

22  employer has the burden of proof to articulate a legitimate,

23  nondiscriminatory reason for the challenged action. The plaintiff

24  must then show by a preponderance that the employer's stated

25  reason for the action was in fact mere pretext. <u>McDonnell Douglas</u>

26  <u>Corporation v. Green</u>, 411 U.S. 792, 802-806 (1973); <u>Texas</u>

27  <u>Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 253

28  (1981).

1    In order to demonstrate a prima facie case, a plaintiff must

2 offer evidence that gives rise to an inference of unlawful

3 discrimination. <u>Burdine</u>, 450 U.S. at 253-54. A plaintiff may

4 accomplish this by introducing direct evidence of discriminatory

5 intent (i.e., evidence which, if believed, proves the fact [here

6 discriminatory animus] without inference or presumption, <u>Godwin</u>

7 <u>v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998); by

8 introducing evidence that suggests that the employment decision

9 was based on an illegal discriminatory criterion; or by using

10 factors such as those set forth in <u>McDonnell Douglas</u> at 802

11 (there, showing membership in a protected class, qualification

12 for a position, rejections despite qualifications, and the

13 employer's continuing to seek applicants). <u>Cordova v. State Farm</u>

14 <u>Ins. Companies</u>, 124 F.3d 1145, 1148-49 (9th Cir. 1997).

15    Because the ultimate burden of persuading the trier of fact

16 that the defendant intentionally discriminated against the

17 plaintiff remains at all times with the plaintiff, the burden of

18 persuasion never shifts; rather, a defendant's burden is to rebut

19 the presumption of discrimination by producing evidence that the

20 reason for the challenged action was legitimate and

21 nondiscriminatory. The defendant need not persuade the Court that

22 it was actually motivated by the proffered reasons; it is

23 sufficient that the defendant's evidence raises a genuine issue

24 of fact as to whether it discriminated against the plaintiff.

25 <u>Burdine</u>, 450 U.S. at 254-55. This requirement is met if the

26 defendant clearly sets forth through admissible evidence the

27 reasons for the challenged action that are legally sufficient to

28 justify a judgment for the defendant. <u>Id.</u> at 255. Once this

1  burden of production is met, the presumption raised by the prima
2  facie case is rebutted, and it disappears. Id.

3      The plaintiff's burden at this point is to persuade the
4  Court that the plaintiff has been the victim of intentional
5  discrimination, which may be accomplished either 1) directly by
6  persuading the Court that a discriminatory reason more likely
7  motivated the employer, or 2) indirectly by showing that the
8  employer's proffered explanation is unworthy of credence.
9  Burdine, 450 U.S. at 256.

10      Here, Plaintiff has not identified any direct evidence of
11  discriminatory animus.

12      With respect to indirect evidence, Plaintiff has not
13  produced or pointed to evidence that suggests that any use or
14  failure to use an interpreter, or any decision to fail him in the
15  Firing Methods and Procedures, S-234 class and/or in the Advanced
16  Academy, dismiss him from the Wildland Firefighter Apprentice
17  Program (WFAP), place him in non-pay status thereafter in January
18  1999, convert him to a temporary appointment in May 1999, or
19  terminate his temporary position in November 1999 at the end of
20  the fire season was based on an illegal discriminatory criterion.
21  Plaintiff's work status customarily reverted to non-pay status at
22  the end of the fire season.

23      There is no basis for an inference that exclusive use of the
24  English language in the written testing program at the Advanced
25  Academy shows an intent to discriminate against Plaintiff on the
26  basis of his race or national origin. Even if it is assumed that
27  a person of Asian race or of Hmong-Lao national origin is more
28  likely than otherwise to speak an Asian or Lao language, it is

1    not necessarily, inherently, or even more likely than not to be

2    true that the person's origin renders the person limited or

3    unskilled in English or even less skilled in English than persons

4    of other races or national origins would be. The mere fact of

5    national origin or race, coupled with the use of the English

6    language in the test, does not logically or rationally permit an

7    inference of intentional discrimination.

8        With respect to the use of an interpreter, or someone to

9    explain parts of the test, the evidence shows that on the first

10    attempt, the instructor declined to assist Plaintiff by

11    explaining the questions because there was no time left;

12    Plaintiff believed that this was the truth. That there was no

13    time left to assist Plaintiff during the normal testing process

14    does not permit an inference that the failure to help him was due

15    to a discriminatory intent. As to the second test or retesting

16    process, the evidence brought to the attention of the Court does

17    not show what the circumstances were. It is not clear that an

18    interpreter or someone to explain a test was ever provided to

19    anyone or was not provided to anyone. Plaintiff's merely failing

20    the test does not permit an inference of discrimination.[3]

21        Finally, using factors such as those set forth in McDonnell

22    Douglas at 802 (there, showing membership in a protected class,

23    qualification for a position, rejections despite qualifications,

24    and the employer's continuing to seek applicants), Plaintiff has

25    not raised an inference of intentional discrimination. Although

26

27

28

---

[3] The Court notes that Plaintiff's complaints filed in this Court were not verified, and Plaintiff has produced no evidence that is considered by the Court. Thus, in analyzing the merits of this motion, the Court relies only on the statement of undisputed facts submitted by Defendant and the evidence specifically referred to therein.

the evidence brought to the attention of the Court shows that
Plaintiff was Asian and therefore was a member of a protected
class, it does not establish that he was qualified; the mere fact
that he was hired for a position with the Defendant does not
warrant an inference that he was qualified to achieve any
particular rank or status or to pass or achieve any specific
requirement in the WFAP schooling program. Although the evidence
might warrant an inference that he continued to be qualified to
be employed by Defendant, there is no evidence of circumstances
that would provide a basis for inferring that either his
classification or the Defendant's failure to recall him after the
last fire season was discriminatory.

C. Disparate Impact

A disparate impact claim under Title VII involves alleged
liability on the theory that the employer is responsible for an
employment practice that is facially neutral in its treatment of
different groups but that in fact falls more harshly on one group
than another and cannot be justified by business necessity; proof
of a discriminatory motive or subjective intent on the part of
the employer is not required. International Brotherhood of
Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977). A
plaintiff establishes a prima facie case of disparate impact by
showing a significant disparate impact on a protected class
caused by a specific, identified employment practice or selection
criterion. Stout v. Potter, 276 F.3d 1118, 1121 (9th Cir. 2002).
In a disparate impact claim, it is not sufficient to present
evidence raising an inference of discrimination; rather, the
plaintiff is required actually to prove the discriminatory

1  impact. Id. at 1122.

2      Title 42 U.S.C. § 2000e-2(k) provides:

3      (k) Burden of proof in disparate impact cases
       (1)(A) An unlawful employment practice based on
4      disparate impact is established under this subchapter
       only if--
5      (i) a complaining party demonstrates that a respondent
       uses a particular employment practice that causes a
6      disparate impact on the basis of race, color, religion,
       sex, or national origin and the respondent fails to
7      demonstrate that the challenged practice is job related
       for the position in question and consistent with
8      business necessity; or
       (ii) the complaining party makes the demonstration
9      described in subparagraph (C) with respect to an
       alternative employment practice and the respondent
10     refuses to adopt such alternative employment practice.
       (B)(i) With respect to demonstrating that a particular
11     employment practice causes a disparate impact as
       described in subparagraph (A)(i), the complaining party
12     shall demonstrate that each particular challenged
       employment practice causes a disparate impact, except
13     that if the complaining party can demonstrate to the
       court that the elements of a respondent's
14     decisionmaking process are not capable of separation
       for analysis, the decisionmaking process may be
15     analyzed as one employment practice.
       (ii) If the respondent demonstrates that a specific
16     employment practice does not cause the disparate
       impact, the respondent shall not be required to
17     demonstrate that such practice is required by business
       necessity.

18  Thus, the plaintiff cannot challenge the cumulative effect of the

19  employer's employment practices generally, but rather must

20  isolate and identify each particular element or practice within

21  the process that causes an adverse impact. Wards Cove Packing

22  Co., Inc. v. Atonio, 490 U.S. 642, 656-57 (1989); Stout v.

23  Potter, 276 F.3d at 1124.

24      Initially, a plaintiff has the burden of showing that a

25  particular employment practice caused the exclusion of applicants

26  for jobs or promotions, etc., because of their membership in a

27  protected group. Watson v. Fort Worth Bank & Trust, 487 U.S. 977,

28

                                23

994 (1988); <u>Stout v. Potter</u>, 276 F.3d at 1122. The statistical evidence must be of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group; this is shown by statistical disparities that are sufficiently substantial to raise an inference of causation. <u>Watson</u>, 487 U.S. at 994-95 (describing the necessary disparity as significantly different, a substantially higher rate, substantially disproportionate, or significantly discriminatory, but expressly declining to define any specific standard deviation). It is insufficient merely to show that a practice or policy has harmed members of the group; rather, a plaintiff must prove the existence of the employer's practice or policy; that the policy has a significant adverse effect on persons of the protected class; the impact of the policy is on terms, conditions, or privileges of employment of the protected class; and the employee population in general is not affected by the policy to the same degree. <u>Garcia v. Spun Steak Co.</u>, 998 F.2d 1480, 1486 (9th Cir. 1993). Once the plaintiff meets this burden, the employer has the burden of persuasion as to the business necessity of the employment practice or policy. <u>Segar v. Smith</u>, 738 F.2d 1249, 1247 (D.C.Cir. 1984). If the defendant meets that burden, the Plaintiff has the burden of proving the availability of an effective business alternative with less disparate racial impact. <u>Contreras v. City of Los Angeles</u>, 656 F.2d 1267, 1275 (9th Cir. 1981).

Here, Plaintiff has not clearly articulated the specific employment practice. In the complaint, he recounts not being

permitted a Hmong interpreter, who could interpret in Plaintiff's native language, for a retest that was written in English. In contrast, he testified that he did not want an interpreter, but rather wanted someone who spoke English to explain the questions to him in English. (SUF 16.) If it is assumed that the employment practice is testing in English without access to an English speaker to explain the questions, the evidence brought to the attention of the Court does not establish that this was the practice of the employer either in the first S-234 testing (where Plaintiff admits that there was no time for someone to explain), in the retesting (regarding which there is an absence of evidence cited to the Court regarding the circumstances of the testing), or otherwise.

Further, it is not clear what the protected class is. If the protected class is non-native English speakers, then the statistical evidence, which does not indicate the native language of the academy students, does not demonstrate a disparity on that ground. Likewise, the statistical evidence does not break down subsets of Asian ancestry.[4] Both the complaint and the statistics do refer to Asian ancestry, however.

If it were assumed that the practice in question is testing in English and denying the assistance of a person to explain the English question in English, and if it were further assumed that the protected class is persons of Asian origin, then the Court

---

[4] The declarations establish that the Forest Service does not keep a record of whether or not students are native English speakers or not. Further, it does not break up Asian ethnicity into various subsets such as Hmong, Vietnamese, Chinese, or Japanese; it simply records an Asian category of Asian/Pacific Islander. Thus, the most precise degree of identification of the sample that may be ascertained is Asian ancestry.

1 must consider whether or not Defendant has established that it is
2 entitled to judgment as a matter of law.

3       First, to demonstrate a significant discrepancy in the
4 impact of testing in English without access to someone to explain
5 the questions to persons of Asian origin, the initial inquiry
6 should be whether there is a discrepancy in the rate of passage
7 as between persons in the protected group and those in other
8 groups. <u>See</u> <u>Fudge v. City of Providence Fire Dept.</u>, 766 F.2d 650,
9 657 (1st Cir. 1985). Disparate impact should generally be measured
10 against the actual pool of applicants or eligible employees.
11 <u>Moore v. Hughes Helicopters, Inc.</u>, 708 F.2d 475, 482 (9th Cr.
12 1983).

13       The statistical evidence provided by the declarations of
14 Bennion and Sutliff generally reveals that with respect to the
15 Asian students from region 5 at the advanced academy, two of
16 five, or forty per cent, passed the advanced academy. Twenty-one
17 of twenty-two non-minority students passed, or 95.5 per cent. The
18 overall pass rate of all categories other than Asians was 99.1
19 per cent. The passage rate of each of the African, Hispanic, and
20 American Indian minority groups was 100 per cent. The Asian
21 students' passing score of 40 per cent was only 42 per cent of
22 the non-minority students' 95.5 per cent pass rate, and it was
23 40.36 per cent of the 99.1 per cent pass rate of the combined
24 non-Asian categories. The Asian students' pass rate is thus less
25 than eighty per cent of the passing rate of the highest group and
26 indeed of each group and all the other groups combined. Such a
27 statistical showing is generally sufficient to show a
28 significantly disparate impact. <u>Connecticut v. Teal</u>, 457 U.S.

440, 443-44 n.4 (1982); <u>see</u> 28 C.F.R. § 50.14, 29 C.F.R. § 1607.4. Based on the numbers alone, one reasonable conclusion is that a prima facie case of disparate impact of the English language testing on students of Asian origin has been established.

Defendant points to defects in the statistical evidence. The appropriate use of statistical evidence is conditioned by the presence of proper supportive facts and the absence of variables which would undermine the reasonableness of the inference of discrimination which is drawn. <u>Contreras v. City of Los Angeles</u>, 656 F.2d 1267, 1272 (9th Cir. 1981). Here, there is no information on the ethnic makeup of students and pass rates of students at the <u>basic</u> academy. Even if the appropriate focus were on only the advanced academy, there are no data for the third class of testing (S-205), and it is unclear if everyone passed or if there were additional reductions in the size of the class. (See Sutliff Decl. at ¶¶ 10-12.)

Further, even drawing all inferences in favor of Plaintiff, the nonmoving party, with respect to the advanced academy program, only part of the population of students is represented. The statistics submitted by Defendant represent only the part of the student population in the WFAP program that were from region 5; persons from other regions with various ethnic backgrounds were attending, but no statistics are submitted for them. (Sutliffe Decl. at ¶ 12.) Thus, there is no complete or definitive evidence regarding the actual pool of students relevant to the drawing of the pertinent comparison.

Further, even within the limited region 5 sample, the ethnic

makeup of ten of the forty-four students, who constitute nearly
twenty-five per cent of the sample, is unknown.

The sample, which as previously noted is not the full,
actual pool in question, is very small. See Kim, 772 F.2d at 523-
24 (despite comparative pass rates on an oral language
proficiency test of less than eighty percent, the sample of 12,
including four Germans and eight other non-native English
speakers, was very small such that it was not statistically
significant) (citing Mayor of Philadelphia v. Educational
Equality League, 415 U.S. 605, 620-21 (1974)); Contreras v. City
of Los Angeles, 656 F.2d 1267, 1273 (9th Cir. 1981) (five of
seventeen Spanish-surnamed applicants compared with twenty-two of
forty non-Hispanic applicants not significant despite expert
statistical opinion evidence); White v. City of San Diego, 605
F.2d 455, 460 (9th Cir. 1979) (in view of expert opinions
regarding the significance of statistical evidence, and in the
absence of expert statistical evidence to the contrary, the
appellate court upheld the district court's conclusion that rates
of fifteen out of twenty-eight and nine out of twenty-two were
not significant because of the small size of sample).

In this summary judgment proceeding, the Court will draw
every reasonable inference possible in favor of Plaintiff, the
non-moving party. The statistical sample is arguably small and
incomplete. However, Defendant has not produced all the pertinent
data regarding the make-up of the academy students. Likewise,
Defendant has not produced expert opinion regarding the
significance of the statistical data submitted by Defendant. The
status of the evidence is that a reasonable person could infer a

1  significant disparity, and yet the Court is uncertain whether or
2  not an inference of significant disparity is the better inference
3  from the statistics provided by Defendant.[5]

4       Defendant has the initial burden on this motion either to
5  produce affirmative evidence negating an essential element of
6  Plaintiff's case, or to demonstrate that Plaintiff does not have
7  enough evidence of an essential element of its claim to carry its
8  ultimate burden of persuasion at trial. Nissan Fire & Marine Ins.
9  Co. v. Fritz Companies, 210 F.3d 1099, 1106 (9th Cir. 2000).
10 Defendant has not produced affirmative evidence negating what
11 would be Plaintiff's showing that persons of Asian descent who
12 took the English-only tests, apparently without explanation,
13 suffered significantly reduced rates of passage of the classes at
14 the advanced academy. By pointing to omissions or defects in the
15 statistical picture, Defendant raised some question regarding the
16 sufficiency of the evidence to demonstrate on behalf of Plaintiff
17 at trial that students of Asian descent who took tests in the
18 English language suffered a negative and disparate impact.
19 However, because of the incomplete statistics submitted by
20 Defendant and the absence of expert opinion evidence regarding
21 the strength of the statistical evidence, Defendant did not
22 succeed in demonstrating that Plaintiff does not have enough
23 evidence of an essential element of its claim to carry its
24 ultimate burden of persuasion at trial on a disparate impact
25
26
27      [5] There is no expert statistical evidence submitted by either party. As
    previously discussed, the only portion of the Defendant's evidence being
    considered by the Court is that expressly pointed out by Defendant, and the
28  Court has stricken the materials submitted by Plaintiff and thus is not
    considering them.

claim.

Defendant argues that Plaintiff failed to demonstrate a causal relationship between the challenged practice (testing in English without someone to explain or interpret) and the result. See, Contreras v. City of Los Angeles, 656 F.2d 1267, 1273-74. In view of the testimony regarding Plaintiff's difficulty with the questions in English, and further considering the absence of evidence regarding other reasons for the Asian students' failure, the Court concludes that one rational inference is that testing in the written English language was causally related to the failure.

In summary, the Court concludes that with respect to a claim of disparate treatment, Defendant has produced evidence negating the claim and has shown that any evidence Plaintiff may have concerning such treatment is inadequate to sustain Plaintiff's burden of proof of discriminatory treatment at trial. Defendant has shown that it is entitled to judgment as a matter of law on the discriminatory treatment claim. With respect to Plaintiff's claim of disparate impact, Defendant did not meet its initial burden, so Plaintiff is not required to present additional evidence. The Court concludes that Defendant has not shown as a matter of law that it is entitled to judgment on a disparate impact claim.

V. Jury Trial Demand

Defendant requests that Plaintiff's jury demand be stricken because the Court has determined that Defendant has shown that it is entitled to judgment as a matter of law with respect to Plaintiff's disparate treatment claim. The only remaining theory

1  of liability is discriminatory impact, with respect to which
2  Plaintiff is not entitled to a jury trial.

3      Plaintiff demanded a trial by jury in the complaint. Title
4  VII extends a right to a jury trial with respect to claims of
5  intentional discrimination but "not an employment practice that
6  is unlawful because of its disparate impact." 42 U.S.C. §
7  1981a(a). Thus, Plaintiff is not entitled to a jury trial on an
8  employment discrimination claim that is solely based on a
9  disparate impact theory and does not involve disparate treatment.
10 Garcia v. Woman's Hopital of Texas, 143 F.3d 227, 230 n. 1 (5th
11 Cir. 1998); Allison v. Citgo Petroleum Corp., 151 F.3d 402, 423
12 (5th Cir. 1998).

13     Fed. R. Civ. P. 39(a) provides that when trial by jury has
14 been demanded, the trial shall be by jury unless the court upon
15 motion or of its own initiative finds that a right of trial by
16 jury of some or all of the issues does not exist under the
17 Constitution or statutes of the United States. Where a right of
18 jury trial does not exist as to issues specified in a jury
19 demand, the appropriate remedy is to strike the demand. United
20 States v. Missouri River Breaks Hunt Club, 641 F.2d 689, 692 (9th
21 Cir. 1981).

22     Thus, Defendant's request that the Court strike Plaintiff's
23 jury demand will be granted.

24     VI. Disposition

25     Accordingly, it IS ORDERED that

26     1) Defendant's motion for summary judgment or summary
27 adjudication IS GRANTED IN PART and DENIED IN PART; and

28     2) Defendant's motion for summary adjudication on

31

1  Plaintiff's Title VII discrimination claim on a theory of
2  disparate treatment IS GRANTED; and

3        3) Defendant's motion for summary adjudication of Plaintiff's
4  Title VII discrimination claim on a theory of disparate impact IS
5  DENIED; and

6        4) The documents filed by Plaintiff on August 4, 2005,
7  including a separate statement, points and authorities,
8  declaration of James C. Holland and exhibits, and declaration of
9  James C. Holland re: Late Filing of Opposition (Docs. 30 through
10 33), ARE STRICKEN; and

11       5) Defendant's request that the Court strike Plaintiff's
12 jury demand IS GRANTED.

13

14 IT IS SO ORDERED.

15 **Dated:   December 22, 2005**              **/s/ Sandra M. Snyder**
   icido3                              UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28